**MARKOWITZ HERBOLD PC**
Stanton R. Gallegos, OSB #160091
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
Email: stantongallegos@markowitzherbold.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305)-330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: mroberts@bursor.com
*Pro Hac Vice Application Forthcoming*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

|  |  |
|---|---|
| KRYSTINE AQUINO-RORALDO and REGINA BERRIOS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MEDICAL MANAGEMENT INTERNATIONAL, INC. d/b/a BANFIELD PET HOSPITAL <br><br> Defendant. | Case No. 3:23-cv-01786-YY <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** <br><br> Judge: Hon. Youlee Yim You <br><br> Room: 1227 |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    DEFENDANT'S VIOLATIONS OF THE CIPA CAUSED PLAINTIFFS AN INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING .............................. 2

II.   DEFENDANT HAS NOT MET ITS BURDEN TO SHOW PLAINTIFFS' NOTICE OF OR ASSENT TO DEFENDANT'S TERMS OF SERVICE, AND THE CHOICE OF LAW CLAUSE IS INAPPLICABLE AND UNENFORCEABLE ................................................................................................ 7

      A.    Defendant Has Not Shown Plaintiffs Were On Notice Of Or Assented To Its Terms of Service ................................................................. 7

      B.    Plaintiffs' Claims Do Not Fall Within The Scope Of The Narrow Choice Of Law Clause .................................................................. 10

      C.    The Choice Of Law Clause Is Unenforceable Because It Leaves Californians With No Means Of Vindicating The Fundamental Policies Of California ............................................................ 12

III.  PLAINTIFFS PLAUSIBLY ALLEGE VIOLATIONS OF CIPA §§ 631 AND 632 ....... 14

      A.    Defendant Has Not Met Its Burden To Show Plaintiffs Consented To The Interception Of Their Confidential Veterinary Communications ........................................................................ 14

      B.    Plaintiffs Sufficiently Allege That Defendant Aided, Agreed With, Employed, Or Otherwise Enabled Meta's Wiretapping In Violation Of CIPA § 631 ................................................................... 18

      C.    Plaintiffs Plausibly Allege Defendant Employed Meta To Record Plaintiffs' Confidential Veterinary Communications Without Consent In Violation Of CIPA § 632 ......................................... 22

            1.    Veterinary Communications Are "Confidential" ......................... 22

            2.    Defendant Is Liable For Recording Or Employing Facebook To Record Plaintiffs' Communications ........................ 24

CONCLUSION ..................................................................................................... 26

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ................................................................. 9

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......................................... 5, 14, 22

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ................................................. 4

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........................................... 6

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........................................................... 14

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ............................................................. 5

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ............................... passim

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ................................................. 15

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ................................................ 19

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ............................................. 5, 15

*D'Avignon v. Nalco Co.*,
2015 WL 11438553 (C.D. Cal. June 30, 2015) ....................................... 11

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024) ............................................ 6

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .................................................. 15

*Frenzel v. Aliphcom*,
2015 WL 4110811 (N.D. Cal. July 7, 2015) ........................................... 11

*Garcia v. Build.com, Inc.*,
  2023 WL 4535531 (S.D. Cal. July 13, 2023) ............................................... 3

*Garner v. Amazon.com, Inc.*,
  603 F. Supp. 3d 985 (W.D. Wash. 2022)............................................... 11, 12

*Gladstone v. Amazon Web. Servs., Inc.*,
  739 F. Supp. 3d 846 (W.D. Wash. 2024)................................................... 23

*Graves v. Arpaio*,
  623 F.3d 1043 (9th Cir. 2010) ................................................................... 9

*Hilfiker Square, LLC v. Thrifty Payless, Inc.*,
  2016 WL 7031283 (D. Or. Nov. 29, 2016)................................................. 16

*Hogan v. Amazon.com, Inc.*,
  2022 WL 952763 (N.D. Ill. Mar. 30, 2022)............................................... 14

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) ...................................................... 7

*In re Cell Tower Litig.*,
  2012 WL 1903883 (S.D. Cal. May 24, 2012)............................................. 19

*In re Facebook Biometric Info. Priv. Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ............................................... 13, 14

*In re Facebook Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ...................................................................... 2

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ......................................................... 4

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  934 F.3d 316 (3d Cir. 2019) ........................................................................ 3

*In re Hulu Priv. Litig.*,
  2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........................................... 16

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) .................................................. 17, 18

*Jackson v. Amazon.com, Inc.*,
  65 F.4th 1093 (9th Cir. 2023) ................................................................. 7, 8

*James v. Walt Disney Co.*,
  701 F. Supp. 3d 942 (N.D. Cal. 2023) ............................................... passim

*Javier v. Assurance IQ, LLC*,
   2022 WL 1744107 (9th Cir. May 31, 2022) ........................................ 16

*Javier v. Assurance IQ, LLC*,
   649 F. Supp. 3d 891 (N.D. Cal. 2023) ............................................. 24

*Jones v. Ford Motor Co.*,
   85 F.4th 570 (9th Cir. 2023) ....................................................... 2

*JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*,
   533 F. Supp. 3d 999 (D. Or. 2021), *aff'd sub nom.*,
   *JPaulJones, L.P. v. Zurich Ins. Co., (China) Ltd.*,
   2022 WL 1135424 (9th Cir. Apr. 18, 2022) ...................................... 11

*Kearney v. Salomon Smith Barney, Inc.*,
   39 Cal. 4th 95 (2006) ............................................................. 25

*Lightoller v. Jetblue Airways Corp.*,
   2023 WL 3963823 (S.D. Cal. June 12, 2023) ....................................... 6

*Lopez v. Apple, Inc.*,
   519 F. Supp. 3d 672 (N.D. Cal. 2021) ............................................ 14

*M.G. v. Therapymatch, Inc.*,
   2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ..................................... 25

*McClung v. Addshopper, Inc.*,
   2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ......................................... 6

*McCoy v. Alphabet, Inc.*,
   2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ......................................... 17

*Mikulsky v. Noom, Inc.*,
   2023 WL 4567096 (S.D. Cal. July 17, 2023) ......................................... 6

*Mitchell v. Sonesta Int'l Hotels Corp.*,
   2024 WL 4471772 (C.D. Cal. Oct. 4, 2024),
   *adopted as modified*, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024) ................... 22

*Mount v. Pulse Point, Inc.*,
   684 F. App'x 32 (2d Cir. 2019) .................................................... 2

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................. 8, 15

*Noel v. Hall*,
   2006 WL 2129799 (D. Or. July 28, 2006) ......................................... 12

*Palomino v. Facebook*,
   2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ............................................................ 11

*Patterson v. Respondus, Inc.*,
   593 F. Supp. 3d 783 (N.D. Ill. 2022) ............................................................. 13, 14

*People v. Snook*,
   16 Cal. 4th 1210 (1997) ...................................................................................... 19

*Posadas v. Goodyear Tire and Rubber Co.*,
   2024 WL 5114133 (S.D. Cal. Dec. 11, 2024) ....................................................... 6

*Powell v. Sys. Transp., Inc.*,
   83 F. Supp. 3d 1016 (D. Or. 2015) ...................................................................... 12

*Price v. Carnival Corp.*,
   712 F. Supp. 3d 1347 (S.D. Cal. 2024) ............................................................... 15

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..................................................... 20

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) ......................................................................................... 12

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015) ................................................................... 6

*Salazar v. National Basketball Association*,
   118 F.4th 533 (2d Cir. 2024) ................................................................................ 2

*Seal Source, Inc. v. Calderon*,
   2011 WL 5041275 (D. Or. Sept. 29, 2011) ........................................................... 9

*Skye Bioscience, Inc. v. PartnerRe Ireland Ins. Dac.*,
   2023 WL 4768734 (C.D. Cal. June 20, 2023) ..................................................... 11

*Smith v. Facebook, Inc.*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017) ................................................................. 18

*Smith v. Google, LLC*,
   722 F. Supp. 3d 990 (N.D. Cal. 2024) ................................................................... 9

*Smith v. LoanMe, Inc.*,
   11 Cal. 5th 183 (2021) ................................................................................... 19, 25

*Smith v. YETI Coolers, LLC*,
   --- F. Supp. 3d ---, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ...................... 21

*St. Aubin v. Carbon Health Techs., Inc.*,
    2024 WL 439675 (N.D. Oct. 1, 2024) ................................................................ 17, 19, 20

*Stover v. Experian Holdings, Inc.*,
    978 F.3d 1082 (9th Cir. 2020) ............................................................................. 7, 14

*Strehl v. Guitar Center, Inc.*,
    2024 WL 2790373 (C.D. Cal. May 29, 2024) ............................................................ 21

*Tate v. Vitas Healthcare Corp.*,
    --- F. Supp. 3d ---, 2025 WL 50447 (E.D. Cal. Jan. 8, 2025) ...................................... 19, 21, 25

*Tran v. Muhammad*,
    2021 WL 681128 (C.D. Cal. Jan. 15, 2021) ............................................................. 10

*Turner v. Nuance Communications, Inc.*,
    735 F. Supp. 3d 1169 (N.D. Cal. 2024) ................................................................. 16, 24

*Wilson v. Huuuge, Inc.*,
    944 F.3d 1212 (9th Cir. 2019) ............................................................................. 9

*Yockey v. Salesforce, Inc.*,
    688 F. Supp. 3d 962 (N.D. Cal. 2023) .................................................................. 22

*Yockey v. Salesforce, Inc.*,
    745 F. Supp. 3d 945 (N.D. Cal. 2024) .................................................................. 24

*Yoon v. Meta Platforms, Inc.*,
    2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......................................................... 22

## STATUTES

Cal. Bus. & Prof. Code § 4857(a) ..................................................................... passim

Cal. Pen. Code § 630 ................................................................................... 12

Cal. Pen. Code § 631(a) ................................................................... 2, 13, 18, 19

Cal. Pen. Code § 632(a) ......................................................................... 2, 13, 25

Cal. Pen. Code § 632.7 ................................................................................ 25

Or. Rev. Stat. § 15.355(1)(c) ........................................................................... 12

Or. Rev. Stat. § 165.540(1)(a) ......................................................................... 13

**RULES**

Fed. R. Civ. P. 8(d)(2)...................................................................................................... 9, 25

Fed. R. Civ. P. 8(d)(3)...................................................................................................... 9, 25

**OTHER AUTHORITIES**

California Bill Analysis, S.B. 490 Sen. (May 11, 1999) ......................................................... 5, 23

## INTRODUCTION

As polling indicates, "nearly all U.S. pet owners (97%) say their pets are part of their family," and "[a]bout half of pet owners (51%) not only consider their pets to be a part of their family but say they are as much a part of their family as a human member." Anna Brown, *About Half Of U.S. Pet Owners Say Their Pets Are As Much A Part Of Their Family As A Human Member*, PEW RESEARCH CENTER (July 7, 2023) (cleaned up).[1] So, in the same way a parent would not want a pediatrician employing a large technology company to collect medical information about their children for use in marketing and advertising, so too would pet owners balk at veterinarians doing the same for pets. States like California agree, as California "enacted Cal. Bus. & Prof. Code § 4857(a), which prohibits veterinarians from disclosing any information concerning an animal receiving veterinary services, the client responsible for the animal receiving veterinary services, or the veterinary care provided to an animal." Second Amended Complaint (ECF No. 44) (the "SAC") ¶ 20.

Disregarding its patients' right to privacy in veterinary communications, Defendant employed Meta, Inc. ("Meta" or "Facebook") to track patients' activities across their websites, banfield.com and vca.com. And Meta, surreptitiously and without the consent of patients, wiretapped Plaintiffs' and other patients' veterinary communications with Defendant, including office visit details, medications purchased, and other information about patients' pets. SAC ¶¶ 4-5, 43-57, 69-70, 108. This information was then paired with Plaintiffs' and Class Members' identities (*id.* ¶¶ 58-68) and used for marketing and advertising, including by Meta itself. *Id.* ¶¶ 23-42. Thus, Plaintiffs bring claims against Defendant for violations of the California Invasion

---

[1] Available at https://www.pewresearch.org/short-reads/2023/07/07/about-half-us-of-pet-owners-say-their-pets-are-as-much-a-part-of-their-family-as-a-human-member/.

of Privacy Act ("CIPA") §§ 631 and 632 to vindicate these privacy harms.

Defendant, for its part, does not dispute this wiretapping by Meta is occurring. And, as explained in more detail below, Defendant's "excuses" for its privacy-invading conduct have been rejected by the Ninth Circuit and numerous district courts addressing similar claims. For the following reasons, Defendants' Motion should be denied in its entirety.

## ARGUMENT

## I.    DEFENDANT'S VIOLATIONS OF THE CIPA CAUSED PLAINTIFFS AN INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING

As the Ninth Circuit and every other circuit court to address the question has held, the interception of web browsing information in violation of a privacy statute (including the CIPA) is sufficient for Article III standing. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 599 (9th Cir. 2020) (finding Article III standing where "Facebook uses plug-ins to track users' browsing histories when they visit third-party websites, and then compiles these browsing histories into personal profiles which are sold to advertisers to generate revenue"); *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("A statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing.") (cleaned up); *Salazar v. National Basketball Association*, 118 F.4th 533, 542 (2d Cir. 2024) (finding standing where plaintiff alleged his data "was disclosed as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel") (cleaned up); *Mount v. Pulse Point, Inc.*, 684 F. App'x 32, 34-35 (2d Cir. 2019) ("PulsePoint's alleged unauthorized accessing and monitoring of plaintiffs' web-browsing activity implicates harms similar to those associated with the common law tort of intrusion upon seclusion so as to satisfy the requirement of concreteness.").

Against this spate of authority, Defendant contends "Plaintiffs' claims against Banfield should be dismissed for the threshold failure to demonstrate Article III standing to assert their

CIPA claims." MTD at 11. As the Third Circuit aptly put, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion … that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data [] is untenable." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019).

*First*, Defendant argues "Plaintiffs only allege that a person *could* provide certain types of information to Banfield when making an appointment … but never allege that plaintiffs actually communicated that specific information to Banfield and that it was transmitted to Facebook, purportedly causing injury to plaintiffs." MTD at 13 (emphasis in original). On the contrary, Plaintiff Aquino-Roraldo alleges she "scheduled veterinary appointments, purchased veterinary medications, and checked her pet's medical records" on the Website, and Plaintiff Berrios alleges she "scheduled veterinary appointments and checked her pet's medical records" on the Website. SAC ¶¶ 4-5. Plaintiffs further allege that "[e]ach of these communications was intercepted in transit by Facebook—as enabled by Defendant—including communications that contained confidential information about [their] pet[s'] veterinarian records." *Id.* Plaintiffs further allege the information users must submit when making a veterinary appointment (*id.* ¶¶ 48-52), purchase medication (*id.* ¶¶ 53-55), or check a pet's medical records (*id.* ¶¶ 56-57), the plausible inference being Plaintiffs themselves provided this information when they conducted those activities. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 n.2 (N.D. Cal. 2023) ("The Court acknowledges that the complaint does not expressly tie the allegations … to Plaintiffs specifically. However … it can reasonably be inferred that the list of information that BlueKai collects applies to Plaintiffs."); *see also Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) (finding "Plaintiff has standing at this stage" and rejecting argument that "Plaintiff never

asserts that *she* shared 'highly sensitive personal data' with Defendant through the chat feature")
(emphasis in original).  And Plaintiffs allege that they, like other Class Members, provided the
"following pieces of information" on "the Banfield Website":

> (i) pet names; (ii) type of veterinary appointment (*e.g.*, general
> wellness checkup, emergency); (iii) the time and date of a veterinary
> appointment; (iv) Plaintiffs' and Class Members' personally
> identifying information (*e.g.*, full name, email address, phone
> number); (v) the medications searched for and purchased by
> Plaintiffs and Class Members); and (vi) pet profile views

*Id.* ¶ 108.  Construing these allegations in Plaintiffs' favor, as the Court must at this stage, Plaintiffs
plausibly allege they communicated sensitive details about their pets that were unlawfully
intercepted by Meta—as enabled by Defendant.  In addition, nothing requires Plaintiffs to allege
their exact private veterinary communications in a public filing.  *James*, 701 F. Supp. 3d at 956
("[T]o the extent Disney suggests Plaintiffs must plead the exact communications they had with
the ESPN.com website, other courts have rejected that position."); *Byars v. Goodyear Tire and
Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("[T]here is no requirement that Byars
specifically allege the exact contents of her communications with Goodyear."); *In re Google
Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 816 (N.D. Cal. 2020) ("[T]he Court rejects
Defendants' suggestion that Plaintiffs must identify specific communications that Plaintiffs
reasonably believed to be private and that were wrongly recorded.  The Court is not convinced that
Plaintiffs are required to produce such details at the pleading stage, prior to discovery.").

  *Second*, Defendant argues that "even assuming [P]laintiffs conveyed that information to
Banfield, the information relates to an animal, not plaintiffs personally."  MTD at 13.  That is like
arguing information about one's child does not concern information about oneself.  Courts have
that found information like "specific web pages viewed, search terms entered, and purchase
behavior" to suffice for Article III standing.  *James*, 701 F. Supp. 3d at 949; *see also*, *e.g.*,

*D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1188, 1192 (S.D. Cal. 2024) (finding Article III standing where users alleged chat communications on "the Website Dodge.com" were intercepted by a third party); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Ninth Circuit law indicates [] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views.").

There is no reason to give veterinary communications less protection than these categories of information, particularly when the California Legislature has said otherwise. *See* Cal. Bus. & Prof. Code § 4857(a); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) ("[L]egislatures may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.") (cleaned up).  Indeed, Cal. Bus. & Prof. Code § 4857(a) also extends to "information concerning … the client responsible for the animal patient receiving veterinary services."  Thus, the California Legislature sought to protect the human interest in keeping communications about their pets confidential.  *See* SAC ¶ 21 ("Veterinary clients believe the records to be confidential, as their own personal records are kept confidential with their medical doctors.  [The California Veterinary Medical Association] feels that public policy should be established to make it clear that the privilege of releasing veterinary information rests with the client.") (citing California Bill Analysis, S.B. 490 Sen. (May 11, 1999)).

Further, Plaintiffs allege that when Facebook intercepted their veterinary communications, Facebook also intercepted information identifying Plaintiffs themselves.  SAC ¶ 69.  Specifically, Plaintiffs allege Facebook intercepted Plaintiffs' e-mail addresses "whenever a pet owner schedules an appointment, purchases medications, or checks their pet's medical records," and e-mail addresses are near universally considered "personally identifiable information."  *Id.* ¶ 58. Moreover, Plaintiffs allege that Facebook intercepted Plaintiffs' Facebook IDs during those same

activities, and Facebook "link[s] [] Facebook IDs [to] corresponding Facebook profiles," which naturally identify an individual. *Id.* ¶ 67; *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2015) (holding "[a] Facebook ID … is [] equivalent to a name"). Therefore, Defendant enabled Meta to intercept information that identifies *Plaintiffs themselves* as having made these veterinary communications. That qualifies as "specific personal information." *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *12 (W.D. Wash. Nov. 14, 2024) (standing alleged where "Plaintiffs allege that Costco collected personal health data that could be linked to their identities through their Facebook accounts.").

*Finally*, Defendant's authorities are distinguishable. In *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *10 (S.D. Cal. June 12, 2023), the third party only intercepted "flight pricing information," which was not "personal information," unlike Plaintiffs' e-mail addresses, Facebook IDs, and veterinary communications here.[2] In *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023), unlike here, "it appear[ed] [the plaintiff] fully expected that her chat would be recorded so that she could file this action." In *Posadas v. Goodyear Tire and Rubber Co.*, 2024 WL 5114133, at *4 (S.D. Cal. Dec. 11, 2024), the plaintiff made "generalized and conclusory allegations that Session Replay technology is capable of capturing private data," versus the specific allegations Plaintiffs make here regarding what pieces of their information were intercepted. The same reasoning distinguishes *Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024), where "Daghaly's allegations about her

---

[2] Defendant also cites to *Mikulsky v. Noom, Inc.*, 2023 WL 4567096 (S.D. Cal. July 17, 2023), which was decided by the same district court judge as *Lightoller*. And *Lightoller*'s holding has been rejected by other district courts to the extent it is "read to hold non-anonymized information on, *e.g.,* websites … is not sufficiently personal." *James*, 701 F. Supp. 3d at 951-52; *see also McClung v. Addshopper, Inc.*, 2024 WL 189006, at *2 n.1 (N.D. Cal. Jan. 17, 2024) (finding *Lightoller* and *Byars* "do not stand for the proposition that a website only causes a privacy injury where it collects the personal information *itself*") (emphasis in original).

own interactions with the Bloomingdales.com website [we]re sparse." Last, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022), "was a data breach case," which "clearly informed the district court's assessment … that … the discovery of a password to a gaming account would [not] be highly offensive to a reasonable person." *James*, 701 F. Supp. 3d at 951 (cleaned up).

## II.     DEFENDANT HAS NOT MET ITS BURDEN TO SHOW PLAINTIFFS' NOTICE OF OR ASSENT TO DEFENDANT'S TERMS OF SERVICE, AND THE CHOICE OF LAW CLAUSE IS INAPPLICABLE AND UNENFORCEABLE

### A.     Defendant Has Not Shown Plaintiffs Were On Notice Of Or Assented To Its Terms of Service

Defendant argues that "[P]laintiffs cannot state a claim under CIPA against Banfield arising from conduct on Banfield's website because the parties agreed that Oregon law—not California law—governed all transactions on Banfield's website." MTD at 14. It is black-letter law in the Ninth Circuit that, "[a]s the party alleging the existence of a contract, [Defendant] has the burden to prove each element of a valid contract—including mutual assent." *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). "Mutual assent requires, at a minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023). Defendant has not even attempted to meet that burden here.

*Jackson* is instructive. In *Jackson*, Amazon sought to compel arbitration of the plaintiff's privacy claims. *See id.* at 1095. As part of that argument, Amazon contended that the plaintiff had agreed to updated terms of service delegating the question of arbitrability to an arbitrator. *See id.* at 1098. However, "Amazon did not provide the court with a copy or description of any such notice, however. Nor did Amazon make any showing that Jackson received such notice." *Id.* at 1099. After emphasizing "[i]t was Amazon's burden to show assent [to the agreement], not [plaintiff's] to show lack thereof," the Ninth Circuit held Amazon's failure to submit the design

and content of the e-mail allegedly informing the plaintiff of the arbitration clause meant Amazon could not meet its burden to show assent. *Id.* at 1100 ("[T]here is no evidence that the email allegedly sent to drivers adequately notified drivers of the update. The district court did not have the email, so it could not evaluate whether the email (assuming it was received at all) sufficed to provide individualized notice.").

 *Jackson* disposes of Defendant's argument here. Despite filing *three motions to dismiss*, Defendant has never once submitted the design and content of its webpage where Plaintiffs were allegedly put on notice of or assented to the Terms of Service. *See* ECF Nos. 7, 22, 48. Instead, Defendant only cites to the language of the terms themselves. MTD at 14. This is insufficient under *Jackson* because, unless Defendant can show Plaintiffs were provided "individualized notice" of the Terms of Service, Defendant cannot demonstrate Plaintiffs were on notice of and therefore assented to the Terms of Service and the choice of law clause within. *Jackson*, 65 F.4th at 1100; *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("[W]here, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract."). Indeed, even the single screenshot from the Website that Defendant cites to does not include any hyperlink to the Terms of Service, much less any language signifying assent to this undisclosed hyperlink by taking some action. MTD at 3.

 As the Ninth Circuit has repeatedly held, merely using a website does not bind a user to any terms they are not made conspicuously aware of and affirmatively asked to assent to. *See*, *e.g.*, *Nguyen*, 763 F.3d at 1177 ("Where the link to a website's Terms of Service is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement."); *Berman v. Freedom Financial*

*Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms— will be prominently displayed, not buried in fine print."); *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220-21 (9th Cir. 2019).[3] Absent this evidence, Defendant cannot demonstrate Plaintiffs were on notice of or assented to the Terms of Service.

Attempting to shirk its burden, Defendant argues that because "Plaintiffs [] directly invoke[] Banfield's Terms to establish their alleged lack of consent," Plaintiffs may not "ignore the governing law provision in those Terms." MTD at 15. However, Plaintiffs are *not* invoking the Terms of Service to demonstrate a lack of consent (which is not their burden as described below). Plaintiffs' primary argument is that "[n]either Defendant nor Facebook procured Plaintiff[s'] prior consent to this interception, nor [were] Plaintiff[s] on notice of the fact that such interceptions were occurring." SAC ¶¶ 4-5; *see also id.* ¶ 70. *In the alternative*, Plaintiffs allege that even if there was notice of and assent to the Terms of Service, "Defendant's Terms of Service do not disclose the wiretapping." *Id.* ¶ 71. But Plaintiffs are allowed to plead in the alternative and "regardless of consistency" without hamstringing themselves. Fed. R. Civ. P. 8(d)(2)-(3).

Further, Plaintiffs' claims do not rely upon Defendant's Terms of Service and Plaintiffs are not otherwise invoking the Terms of Service. *See Smith v. Google, LLC*, 722 F. Supp. 3d 990, 994 (N.D. Cal. 2024) (declining to enforce terms under equitable estoppel where the plaintiffs "are not relying on the terms of their purported agreement with H&R Block in asserting claims against Google" and "[t]hey assert only statutory claims against Google, none of which relies directly on

---

[3] Defendant is also precluded from introducing this evidence and argument for the first time on reply. *Seal Source, Inc. v. Calderon*, 2011 WL 5041275, at *4 (D. Or. Sept. 29, 2011) (" Generally, a party waives any argument raised for the first time in a reply brief.") (citing *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010)).

**Page 9 – PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

the terms of any written agreement between plaintiffs and H&R Block").

### B.    Plaintiffs' Claims Do Not Fall Within The Scope Of The Narrow Choice Of Law Clause

Even if Defendant met its burden to show Plaintiffs' notice of and assent to Defendant's Terms of Service (and Defendant has not per *Jackson*), this dispute does not fall within the scope of the choice of law clause.  Defendant's choice of law clause states that "[t]his Agreement and all transactions contemplated hereby … shall be governed by the internal laws of the State of Oregon." Asai Decl. Ex. 1 (ECF No. 49-1) at 17.  Defendant only focuses on the latter phrase—"all transactions contemplated hereby."  MTD at 14.[4]  But it is hard to fathom how Plaintiffs could have "contemplated" the interception of their confidential communications with their veterinarians by a third party that has no corporate relationship to Defendant.  *See* SAC ¶ 96.  Indeed, California law provides Plaintiffs with an assumption of privacy in their veterinary communications.  *Id.* ¶ 21 ("Veterinary clients believe the records to be confidential, as their own personal records are kept confidential with their medical doctors.") (cleaned up).  And the touchstone of Plaintiffs' claim is Meta's wiretapping was done "surreptitiously" and without consent (*id.* ¶¶ 4-5, 31), which means the wiretapping could not have been contemplated.

Thus, because wiretapping of confidential veterinaries cannot have possibly been "contemplated" by the transaction, the choice of law clause does not apply.  *See*, *e.g.*, *Tran v. Muhammad*, 2021 WL 681128, at \*3 n.4 (C.D. Cal. Jan. 15, 2021) ("Tort claims are covered only when a choice of law provision's intent covers any and all claims arising out of the relationship between the parties.") (cleaned up); *D'Avignon v. Nalco Co.*, 2015 WL 11438553, at \*7 (C.D. Cal.

---

[4] Defendant does contend that "Plaintiffs [] may not assert CIPA claims against Banfield *arising from* [] transactions on Banfield's website."  MTD at 15 (emphasis added).  But the "arising from" language does not appear in Defendant's choice of law clause.  Asai Decl. Ex. 1 at 17.

June 30, 2015) (finding choice of law clause inapplicable because "[t]h[e] claim does not relate to the validity, interpretation, construction, or performance of the Employment Agreement and therefore does not fall within the scope of the choice-of-law provision"); *Skye Bioscience, Inc. v. PartnerRe Ireland Ins. Dac.*, 2023 WL 4768734, at *9-10 (C.D. Cal. June 20, 2023) (finding choice of law clause covering "any dispute involving this Policy" did not encompass "tort claims"); *Frenzel v. Aliphcom*, 2015 WL 4110811, at *8 (N.D. Cal. July 7, 2015) (finding choice of law clause covering "these Terms of Use and any action related thereto" did not apply where claims were not "based on the Terms of Use themselves").

In addition, to the extent there is any ambiguity as to whether the choice of law clause covers this dispute, "courts construe [such ambiguity] against the drafter," Defendants. *JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*, 533 F. Supp. 3d 999, 1009 (D. Or. 2021), *aff'd sub nom.*, *JPaulJones, L.P. v. Zurich Ins. Co., (China) Ltd.*, 2022 WL 1135424 (9th Cir. Apr. 18, 2022). Here, whether the wiretapping of Plaintiffs' confidential veterinary communications was "contemplated" is at best ambiguous, given Plaintiffs could not have contemplated something that happened surreptitiously and without their consent. That too supports finding the choice of law clause does not cover Plaintiffs' claims.

Defendant relies on inapposite authorities. In *Palomino v. Facebook*, 2017 WL 76901, at *3 (N.D. Cal. Jan. 9, 2017), the plaintiffs admitted they agreed to the Facebook Terms of Service, which contained the choice of law clause. Here, the opposite is true. Argument § II.A, *supra*. Further, the Facebook Terms of Service applied to "*any claim* that might arise between [a user] and [Facebook]," not just transactions contemplated by the Terms of Service, so it was clear the plaintiff's claims fell within the scope of the clause. *Palomino*, 2017 WL 76901 at *3 (emphasis added). The same is true of *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985 (W.D. Wash. 2022).

**Page 11 – PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Unlike here, there was clear evidence in *Garner* that registered users were on notice of "Amazon's Conditions of Use and Privacy Notice, which are made available via hyperlink." *Id.* at 996. And, the choice of law clause in *Garner* was significantly broader than in the instant action, covering "*any dispute of any sort* that might arise between you and Amazon." *Id.* at 994 (emphasis added, internal quotations omitted); *see also Castillo*, 2024 WL 4785136, at *2 (distinguishing *Garner* where, unlike in that case, "[t]his choice-of-law provision provides only that Washington law governs interpretation of the terms and conditions; it does not provide that Washington law governs all disputes arising out of use of Costco's website").

### C.    The Choice Of Law Clause Is Unenforceable Because It Leaves Californians With No Means Of Vindicating The Fundamental Policies Of California

Even assuming Defendant demonstrated Plaintiffs were on notice of and assented to the Terms of Use (Defendant has not), and even assuming the narrow choice of law clause covers Plaintiffs' CIPA claims (it does not), the Oregon choice of law clause is also unenforceable as applied to Plaintiffs' CIPA claims. "Oregon law precludes enforcement of contractual choice-of-law provisions that '[c]ontravene an established fundamental policy embodied in the law that would otherwise govern the issue in dispute.'" *Powell v. Sys. Transp., Inc.*, 83 F. Supp. 3d 1016, 1022 (D. Or. 2015) (quoting Or. Rev. Stat. § 15.355(1)(c)).

Here, the CIPA undoubtedly embodies a fundamental policy. "In enacting this [CIPA], the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.'" *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) (quoting Cal. Pen. Code § 630). But if Oregon law were to govern this dispute, that fundamental interest would be thwarted. For one, unlike the CIPA, there is "no private right of action for violation of Oregon's criminal wiretap statutes." *Noel v. Hall*, 2006 WL 2129799, at *2 (D. Or. July 28, 2006).

**Page 12 – PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

And second, unlike California, Oregon is a one-party consent state. *Compare* Or. Rev. Stat. § 165.540(1)(a) (prohibiting wiretapping "unless consent is given by at least one participant"); *with* Cal. Pen. Code § 631(a) (prohibiting wiretapping "without the consent of all parties to the communication"); *and* Cal. Pen. Code § 632(a) (prohibiting wiretapping "without the consent of all parties to a confidential communication").

As such, application of Oregon law would leave Plaintiffs and Class Members (who are all California citizens) without a remedy for Defendant's violations of their privacy. Indeed, the *Castillo* court rejected the same argument brought by the same defense counsel. There, the defendant sought to supplant CIPA claims with a Washington choice of law clause. *Castillo*, 2024 WL 4785136, at *3. The *Castillo* court first recognized "there are 'material differences' between the wiretap statutes of each state." *Id.* That is all the more apparent here where, unlike the CIPA, the Oregon wiretapping statute cannot be enforced by a private plaintiff and requires only one party's consent. The *Castillo* court thus concluded "dismissing claims brought under the CIPA … based on statutory gaps unique to the WPA would not protect California['s] … privacy interests under their wiretap statutes." *Id.* The same is true here, where the Oregon wiretapping statute would not protect Californians' privacy interests because the one-party consent regime imposed by Oregon would expressly permit the conduct that California prohibits.

Under these circumstances, the Oregon choice of law clause cannot be enforced, and application of California law is proper. *See*, *e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1170 (N.D. Cal. 2016) (declining to enforce California choice of law clause where "Illinois will suffer a complete negation of its biometric privacy protections for its citizens if California law is applied"); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 812 (N.D. Ill. 2022) (declining to enforce Washington choice of law clause where doing so "would [] thwart

**Page 13 – PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs' individual right to assert biometric-privacy claims"); *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *3-4 (N.D. Ill. Mar. 30, 2022) (same and noting that unlike Illinois law, "Washington's biometric protection statute does not create a private cause of action").[5]

## III.    PLAINTIFFS PLAUSIBLY ALLEGE VIOLATIONS OF CIPA §§ 631 AND 632

### A.    Defendant Has Not Met Its Burden To Show Plaintiffs Consented To The Interception Of Their Confidential Veterinary Communications

Defendant argues Plaintiffs' CIPA claims must fail because Plaintiffs "fail to plead a lack of consent to the alleged misconduct." MTD at 16. Defendant is wrong. As an initial matter, Defendant ignores it is *Defendant's burden* to show Plaintiffs' consent to the wiretapping, not Plaintiffs' burden to allege a lack thereof. *See*, *e.g.*, *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("[C]onsent is an affirmative defense for which defendant bears the burden of proof.") (cleaned up); *Brown*, 685 F. Supp. 3d at 926 n.13 ("The Court finds, again, that consent is a defense to plaintiffs' claims and it is therefore on Google, not plaintiffs, to prove.") (cleaned up); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 685 (N.D. Cal. 2021) ("The party seeking to establish consent has the burden of proof."). This makes sense. Not only is consent a defense to a tort claim, Defendant is trying to establish consent vis-à-vis a contract with Plaintiffs (the Privacy Policy). And as before, "the party alleging the existence of a contract … has the burden to prove each element of a valid contract—including mutual assent." *Stover*, 978 F.3d at 1086. Given these facts, consent must be an affirmative defense.

Regardless, Plaintiffs plausibly allege they did not consent to Meta's wiretapping. *See* SAC ¶¶ 4-5. *First*, as noted above, "[u]sers, including Plaintiffs, are never given notice of, nor do

---

[5] Notably, the choice of law clauses in *In re Facebook* and *Patterson* included language that the clause's chosen law should be applied "without regard to conflict of law provisions." *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1164; *see also Patterson*, 593 F. Supp. 3d at 807 n.11. Nonetheless, both courts declined to enforce the chosen law.

they consent to, any terms that would permit the wiretapping." *Id.* ¶ 70; *see also* Argument § I.A, *supra*. As with the Terms of Use, there is no conspicuous hyperlink to Defendant's Privacy Policy on Defendant's Website that Plaintiffs or other users are put on notice of or otherwise assent to. Argument § I.A, *supra*. "[M]erely having a privacy policy online" is insufficient "to show consent under CIPA." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. 2024); *D'Angelo v. FCA*, 726 F. Supp. 3d at 1197 ("Privacy policies, however, do not bind users 'where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent.'") (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1778-79 (9th Cir. 2014)).

Instead, Defendant must demonstrate that users were on notice of and unambiguously assented to that Privacy Policy. *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1358 (S.D. Cal. 2024) ("Where, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.") (cleaned up). Defendant has not done so for the same reasons as above. Argument § I.A, *supra*.

Thus, Plaintiffs' allegations that they did not consent to any wiretapping, and Defendant's failure to show Plaintiffs were on notice of the Privacy Policy, are sufficient to allege a lack of consent. *See*, *e.g.*, *Price*, 712 F. Supp. 3d at 1359 (finding "Plaintiffs have sufficiently alleged that interception of their communications occurred without their consent" where "a reasonably prudent user would not "necessarily have known or learned of the existence of Carnival's privacy agreement prior to acting") (cleaned up); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 941 (S.D. Cal. 2024) ("Plaintiff alleges neither he nor class members expressly or impliedly consented to any of Defendant's actions when they used the Website to chat with a Kohl's customer service

Page 15 – **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

representative.  That is sufficient at this stage.") (cleaned up).

*Second*, to the extent there was assent to Defendant's Privacy Policy (and there was not), Defendant has also not shown that such assent occurred *before* the wiretapping occurred.  *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("[W]e conclude that the California Supreme Court would interpret Section 631(a) to require the *prior consent* of all parties to the communication.") (emphasis added).  Plaintiffs likewise do not allege any such consent was procured prior to the wiretapping (not that any consent was procured at all).  SAC ¶¶ 4, 5, 70, 100.

*Third*, even if there was notice of and prior assent to Defendant's Privacy Policy (and there was not), there is at least a question of fact as to whether the Privacy Policy disclosed (and thus sufficed for consent for) the wiretapping.  Plaintiffs allege "Defendant [] expressly represents that it will refrain from collecting personally identifiable information" in the privacy preference center.  SAC ¶ 72.  Yet, "[a]s courts across the country have recognized … the identifiers that the Facebook Pixel captures—Facebook ID, email address, first name, last name, and phone number—constitute 'directly personal information.'"  *Id.* ¶ 73; *see also*, *e.g.*, *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) ("The Facebook User ID is more than a unique, anonymous identifier.  It personally identifies a Facebook user.").

What a reasonable consumer would believe if they were on notice of each of these conflicting privacy statements cannot be determined at this stage.  *See*, *e.g.*, *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, 2016 WL 7031283, at *3 (D. Or. Nov. 29, 2016) ("dismissal at this stage in the proceedings is inappropriate, especially because a determination regarding the parties' objectively reasonable expectations generally involves a question of fact"); *Turner v. Nuance Communications, Inc.*, 735 F. Supp. 3d 1169, 1181 (N.D. Cal. 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified

Plaintiffs of Nuance's conduct"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims."). Indeed, even if the opportunity was conspicuously provided to them, "Plaintiffs could have decided not to opt out of [Defendant]'s use of third-party tracking technologies because they did not know that such technologies would be used regarding their personal health data." *Castillo*, 2024 WL 4785136, at *12.

*Fourth*, it is also a question of fact whether Meta's terms would be understood by a reasonable user to disclose that Meta would intercept confidential veterinary communications. *See* SAC ¶¶ 74-83 (alleging why Meta's disclosures were insufficient). For instance, Meta specifically "does not want websites or apps sending us sensitive information about people," which "includes, among other things, any information defined as sensitive under applicable laws." *Id.* ¶ 81 (cleaned up). Given California considers veterinary communications to be sensitive and confidential (Cal. Bus. & Prof. Code § 4857(a)), "[n]o reasonable user would read those terms and representations as permitting Facebook to intentionally intercept electronic communications that it knows the law protects and deems sensitive." SAC ¶ 83.

Cementing this conclusion, courts have held that "the 'generalized notice' in Meta's data-collection policies is insufficient to establish consent to collect personal health data." *Castillo*, 2024 WL 4785136, at *12; *see also*, *e.g.*, *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 439675, at *9 (N.D. Oct. 1, 2024) (same). For instance, in *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793-94 (N.D. Cal. 2022), the court was "skeptical that a reasonable user who viewed Meta's policies would have understood that Meta was collecting protected health information." This was "especially true" for the reason Plaintiffs argued above: "Meta policies (such as the Business Tool Terms) expressly provide that website developers will not share data that they know

or reasonably should know includes … categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines." *Id.* at 794 n.9 (cleaned up).[6] There is no reason to distinguish these holdings because this is veterinary information as opposed to human medical information. That information is still personal and associated with Plaintiffs and Class Members (*see* Argument § I, *supra*), it is analogous to if a child's health information was being disclosed when a parent scheduled a medical appointment, and it is equally protected by California law—something Meta would know as a California company. Thus, a reasonable user reviewing Meta's policies would not understand Meta is collecting their private veterinary communications.

### B. Plaintiffs Sufficiently Allege That Defendant Aided, Agreed With, Employed, Or Otherwise Enabled Meta's Wiretapping In Violation Of CIPA § 631

Defendant contends Plaintiffs' CIPA § 631(a) claim fails to allege "aiding and abetting liability" because "[P]laintiffs fail to plead that Banfield knowingly aided Facebook." MTD at 19-20 (cleaned up). Defendant's argument stumbles out of the gate because the word "abet" appears nowhere in CIPA § 631(a). Instead, the text of the fourth clause of CIPA § 631(a) provides for liability when a person "aids, agrees with, employs, or conspires with any person" to violate the statute. Cal. Pen. Code § 631(a).

As courts have held, the "plain text of section 631(a) is unambiguous on this issue … [i]t does not require that a party aid *and* abet," and "there is no basis to read in a common law standard of aiding and abetting when the statute itself is clear." *Tate v. Vitas Healthcare Corp.*, --- F. Supp.

---

[6] These authorities also distinguish *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017)—which Defendant relies on—as concerning "web browsing activity on websites that publish information about medical conditions and treatments," as opposed to "personal health information." *Castillo*, 2024 WL 4785136, at *12.

3d ---, 2025 WL 50447, at *7 (E.D. Cal. Jan. 8, 2025) (emphasis in original); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *St. Aubin*, 2024 WL 4369675, at *7-8 ("The statute as worded does not include an intent standard … The Court finds the approach in *Cousin* more persuasive because it more closely follows the language of the statute.").  Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former.  *See*, *e.g.*, *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. May 24, 2012) ("The first step in analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (cleaned up); *People v. Snook*, 16 Cal. 4th 1210, 1215 (1997) ("If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.") (cleaned up).

The legislature's use of the terms "aids," "agrees with," and "employs" indicates CIPA § 631(a) was meant to apply to a much broader swath of non-criminal conduct, regardless of "specific intent."  *See Cousin*, 681 F. Supp. 3d at 1129-30.[7]  Thus, "aid" should be interpreted as "to give assistance,"[8] "agrees with" as "to concur in opinion or purpose,"[9] and "employs" as "to make use of" or "to hire."[10]  In short, a defendant violates the fourth clause of CIPA § 631(a) where it simply "enables" another's wrongdoing.  *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330,

---

[7] The fact that CIPA is a criminal statute does not mean the Court should require a criminal level of intent.  Indeed, the California Supreme Court has rejected application of criminal law principles like the rule of lenity to other provisions of CIPA.  *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021) (rejecting application of rule of lenity to CIPA § 632.7).

[8] *Aid*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/aid.

[9] *Agree*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[10] *Employ*, BLACK'S LAW DICTIONARY (11th ed. 2019).

**Page 19 – PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

at *2 (N.D. Cal. Oct. 23, 2019) ("[T]he complaint adequately alleges that Moosejaw violated section 631 by *enabling* NaviStone's wrongdoing.") (emphasis added).

Applying the plain textual standard, Plaintiffs have met their burden because they sufficiently allege that Defendant enabled Facebook's wrongdoing. Plaintiffs allege that "Defendant has integrated the Facebook Tracking Pixel into its website." SAC ¶ 43. Plaintiffs also allege that Defendant did so pursuant to agreement(s) with Facebook. *See*, *e.g.*, *id.* ¶ 82 ("Facebook [states that] … '[b]usinesses that advertise on Facebook are required to have any necessary rights and permissions to use this information, as outlined in our … Terms that businesses must agree to.'"); *id.* ¶ 38 ("Facebook confirms, in its 'Meta Business Tools Terms,' that it has the capability to use information it collects for purposes other than recording it and conveying it to Defendant."). Plaintiffs further allege that Facebook can capture veterinary communications on the Website because Defendant configured the Facebook Tracking Pixel to do so. *See id.* ¶ 30. Plaintiffs also allege that Defendant profits from this arrangement, as the Facebook Tracking Pixel enables Defendant to advertise to Facebook users interested in Defendant's services by allowing Facebook to collect Defendant's user data. *See*, *e.g.*, *id.* ¶¶ 25-29, 40. And Plaintiffs allege all of this is done without their consent. *Id.* ¶ 70.

Such allegations are sufficient to allege Defendant willfully enabled Facebook's wiretapping. *See*, *e.g.*, *James*, 701 F. Supp. 3d at 954 (requisite intent alleged where "it can reasonably be inferred that Disney entered into a contractual arrangement with Oracle under which Oracle would collect information from EPSN.com website users so that Disney could market to and attract new customers"); *St. Aubin*, 2024 WL 4369675, at *8 (same where "Carbon Health chose to include Facebook Pixel on its [] Website" and "[t]he Facebook Pixel code enables Facebook to help Carbon Health with advertising to its own patients outside the [] Website"); *Tate*,

2025 WL 50447, at *7 ("Plaintiff's claims that VITAS has supported Invoca … by allowing Invoca access to the calls and has presumably paid Invoca to analyze the data those calls yield are sufficient to implicate section 631(a)."); *Strehl v. Guitar Center, Inc.*, 2024 WL 2790373, at *7 (C.D. Cal. May 29, 2024) (intent alleged for Pennsylvania wiretapping law where "Defendant pays Salesforce to … captur[e] the electronic communications of visitors to the Website") (cleaned up).

Defendant, for its part, cites *Smith v. YETI Coolers, LLC*, --- F. Supp. 3d ---, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024).  MTD at 20.  The *YETI Coolers* court rejected the argument that the statute "incorporate[s] the common law requirement for aiding and abetting simply because it contemplates liability where an individual or entity provides 'aid.'"  *YETI Coolers*, 2024 WL 4539578, at *4.  The court did conclude the statute "does require some level of knowledge and intent."  *Id.*  But "Plaintiffs do not fundamentally dispute that there must have been intent … Their position is that they have sufficiently pled intent in the [SAC] – *i.e.*, one can infer [Defendant] intended to have [Meta] intercept because [Defendant] entered into a contract with [Meta] so that [Meta] would provide such services."  *James*, 701 F. Supp. 3d at 954.  The authorities cited above show "Plaintiffs have the stronger position."  *Id.*

Regardless, unlike in *YETI Coolers*, Plaintiffs here allege Defendant knew the ways Facebook used the intercepted information for Facebook's own purposes, beyond merely storing it, and that this information was collected without prior consent.  SAC ¶¶ 38-42, 70, 98.  Those uses were outlined by Facebook's advertiser-specific terms, to which Facebook's clients, including Defendant, must agree.  *Id.* ¶¶ 38, 82.  Moreover, Defendant (as a veterinary services provider) knew it had a duty to Plaintiffs and Class Members to safeguard their sensitive information (protected by Cal. Bus. & Prof. Code § 4857) and keep it confidential.  SAC ¶¶ 3-5, 18-22, 43-45, 47, 55, 57, 59, 107-111.  And it is wrong that "Banfield did not intend or know that Facebook

would engage in illegal interception of plaintiffs' communications, but expressly believed Facebook was authorized to obtain the information[]" (MTD at 21), given that Defendant failed to receive consent.  *See* Argument § III.A, *supra*.

### C.     Plaintiffs Plausibly Allege Defendant Employed Meta To Record Plaintiffs' Confidential Veterinary Communications Without Consent In Violation Of CIPA § 632

#### 1.     Veterinary Communications Are "Confidential"

Defendant argues that Plaintiffs' veterinary communications are not confidential because "[w]ritten online communications are generally considered not 'confidential' as a matter of law" and "Plaintiffs fail to rebut the presumption."  MTD at 22-23.  But this "argument, that California courts have developed a presumption that users do not have an expectation of privacy over internet communications, fails on examination."  *Brown*, 685 F. Supp. 3d at 937.  "[T]here is no requirement that Plaintiff[s] allege something 'unique' about [their] particular Internet communications … to make them … confidential."  *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *10 (C.D. Cal. Oct. 4, 2024), *adopted as modified*, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024).

In any event, courts have held written online communications concerning healthcare information fall within realm of "confidential communications."  *See*, *e.g.*, *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (rejecting argument that chat "communications [] over the internet" were not confidential where communications were made "in a healthcare context").  And courts have deemed written online communications "confidential" when they concern information that is protected by a federal or state statute.  *See*, *e.g.*, *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *7 (N.D. Cal. Dec. 30, 2024) ("collected data … confidential because it allegedly reveals the exact title of the video being watched," which is protected by the federal Video Privacy Protection Act); *Mitchell*, 2024 WL 4471772, at *1, *11 (finding "Plaintiff's interactions with a website … in the course of browsing and booking a hotel" were "'confidential'

(irrespective of whether or not they fall within … California Civil Code § 53.5)").

Marrying these two concepts is easy. Cal. Bus. & Prof. Code § 4857(a) mandates that "[a] veterinarian licensed under this chapter shall not disclose any [such] information," except under specific circumstances that are not present here. *See* Cal. Bus. & Prof. Code §§ 4857(a)(1)-(6). Cal. Bus. & Prof. Code § 4857(c) further clarifies that the communications at issue are "confidential information." And the legislative history of this law notes that "[v]eterinary clients believe the records to be confidential, as their own personal records are kept confidential with their medical doctors." SAC ¶ 21 (citing California Bill Analysis, S.B. 490 Sen. (May 11, 1999)). "Bearing in mind that a person's objectively reasonable expectation of confidentiality is generally a question of fact" (*Gladstone v. Amazon Web. Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024) (cleaned up)), this law supports Plaintiffs' reasonable expectation that Defendant, as a veterinary services provider, would not enable a massive technology company like Facebook to collect Plaintiffs' veterinary communications for marketing and advertising without notice or consent. *See*, *e.g.*, SAC ¶¶ 20-22, 25-29, 45, 70, 108, 110-111.

Defendant repeats two arguments from prior in the briefing: that the communications are not confidential because they "pertain to plaintiffs' animals—not their own personal medical information," and "plaintiffs authorized those disclosures." MTD at 23-24. As to the former, the communications are "not anonymized because (i) Facebook collects users' email addresses, and (ii) Defendant enables Facebook to link users' communications with their Facebook IDs, which reveals their identities." SAC ¶ 69; *see also* Argument § I, *supra*. Thus, Defendant enables Facebook to link Plaintiffs' identities with their veterinary communications, which the California Legislature sought to keep confidential. *See* SAC ¶ 21. And again, Defendant's argument is like saying a parent has no reasonable expectation of privacy in medical communications concerning

their child.  As to "consent," that has also been disposed of.  Argument §§ II.A, III.A, *supra*.

As a last gasp, Defendant avers that "the very nature of the alleged communications—scheduling an appointment and ordering pet medications—anticipate that those communications would be shared to fulfill the requests."  MTD at 23.  Shared with Defendant, perhaps.  But it is *far different* to say those communications would be intercepted by a completely unrelated company without any notice or consent.  Courts are not sympathetic to the latter.  *See*, *e.g.*, *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 957 (N.D. Cal. 2024) ("[W]hile Plaintiffs may have been aware that the party receiving the message … w[as] receiving the communications … they had not consented to an undisclosed third party intercepting the message.") (internal quotations omitted); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 896 (N.D. Cal. 2023) (holding "while [plaintiff] may have impliedly consented to Assurance's [the website's] collection of his information, he did not impliedly consent to *ActiveProspect* [the third party] doing so") (emphasis in original).

### 2. Defendant Is Liable For Recording Or Employing Facebook To Record Plaintiffs' Communications

Defendant contends that "Plaintiffs' § 632 claim also fails for the independent reason that they fail to allege that Banfield … engaged in improper eavesdropping."  MTD at 24.  More specifically, Defendant contends "plaintiffs' allegations only assert that Facebook purportedly engaged in prohibited eavesdropping," and that "[u]nlike § 631(a), § 632 does not expressly provide for derivative liability."  MTD at 24.  Not so.  "Section 632 makes it illegal to either eavesdrop upon or record confidential communications.  The third party doctrine applies to eavesdropping, but not recording."  *Turner*, 735 F. Supp. 3d at 1182 n.4.

In other words, Defendant can be held liable for secretly *recording* a conversation, even if

it cannot be held liable for *eavesdropping* on a conversation.[11]  This accords with caselaw from the California Supreme Court, which has found parties to a communication can be held liable for a violation of CIPA § 632 and some of its offshoots.  *See*, *e.g.*, *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 (2006) ("[T]he terms of section 632 … do[] not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibit[] such a party from secretly or surreptitiously recording the conversation."); *LoanMe*, 483 Cal. 5th at 195 (holding CIPA § 632.7 applies to parties and non-parties to a communication).

So the question is: did Defendant *record* Plaintiffs' communications without consent?  The answer is "yes."  Plaintiffs allege that Defendant employed Facebook to secretly record consumers using an "electronic amplifying or recording device."  *See*, *e.g.*, FAC ¶¶ 3-5, 18-22, 43-45, 47, 55, 57, 59, 107-111.  This is sufficient to state a claim against Defendant for recording confidential communications under CIPA § 632.  *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (sustaining CIPA § 632 claim and rejecting argument that "M.G.'s allegations show that Google – not Headway – allegedly unlawfully eavesdropped or recorded the communications"); *Tate*, 2025 WL 50447, at *1, *6 (sustaining CIPA § 632 where "the healthcare provider utilized a software to listen to the contents of the call and produce data about the call's purpose and resolution.").  Plaintiffs are also permitted to plead claims "alternatively" (Fed. R. Civ. P. 8(d)(2)) and "regardless of consistency" (Fed. R. Civ. P. 8(d)(3)).

---

[11] Defendant's reliance on *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1089 (N.D. Cal. 2018)—which "dismiss[ed] [a] § 632 claim because defendant rideshare company did not '*eavesdrop*' on 'communications' between its own fake customer accounts and competitor" (MTD at 24 (emphasis added))—is distinguishable for this reason.

**Page 25 – PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

Dated: March 13, 2025                    Respectfully submitted,

**MARKOWITZ HERBOLD PC**

By: */s/ Stanton R. Gallegos*
        Stanton R. Gallegos

Stanton R. Gallegos, OSB #160091
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
Email: stantongallegos@markowitzherbold.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305)-330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under L.R. 7-2 because it

**Page 26 – PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

contains 8,305 words, including headings, footnotes, and quotations, but excluding the caption,

table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.

By: */s/ Stanton R. Gallegos*
Stanton R. Gallegos